UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  7/2/14
```

-------------------------------------------------------------X

CATLIN SPECIALITY INSURANCE           :
COMPANY,                              :
                         Plaintiff,   :
                                     :         10 Civ. 8844 (LGS)
          -against-                   :
                                     :         ORDER & OPINION
QA3 FINANCIAL CORP.,                  :
                         Defendant.   :
-------------------------------------------------------------X

LORNA G. SCHOFIELD, District Judge:

       Catlin Specialty Insurance Company ("Catlin") brought this declaratory judgment action

against QA3 Financial Corporation ("QA3"), seeking resolution of the parties' insurance

coverage dispute.  QA3 brought counterclaims, alleging breach of contract and bad faith refusal

to cover.  On December 19, 2012, District Judge Jesse M. Furman, then assigned to the case,

dismissed QA3's counterclaim for bad faith.  On July 19, 2013, the Court denied the parties'

cross-motions for summary judgment, holding that the terms of the parties' insurance policy

were ambiguous.  A four-day jury trial was held from September 30, 2013 to October 3, 2013.

The parties presented extrinsic evidence regarding the terms of the policy, including emails, past

versions of similar policies, and testimony from various witnesses.

       Before charging the jury, QA3 asked the Court to instruct the jury 1) to apply the doctrine

of contra proferentem, which requires construing ambiguous provisions in a contract against the

drafter and 2) to hold Plaintiff, Catlin, to the burden of proving that the exclusionary language

was "stated in clear and unmistakable language" and was "subject to no other reasonable

interpretation."  At the charging conference on October 2, 2013, the Court read an opinion to

counsel explaining that it would not instruct the jury to apply the doctrine of contra proferentem,

and that QA3's requested charge on the burden of proof was merely a restatement of the contra proferentem doctrine.[1]

The jury returned a verdict in favor of Catlin, finding that the parties agreed, in relevant part, to a $1,000,000 limit on the insurance coverage provided by Catlin to QA3. QA3 now brings this motion for a new jury trial pursuant to Federal Rule of Civil Procedure 59, arguing that the Court improperly instructed the jury on 1) the application of contra proferentem to the insurance policy in dispute and 2) the Plaintiff-insurer's burden of proof regarding the parties' intent when they agreed to the ambiguous terms of the contract. Because the jury was properly instructed, Defendant's motion for a new trial is denied. QA3 also moves the Court to amend the judgment pursuant to Rule 59(e). For the following reasons, that motion is also denied.

## LEGAL STANDARD

A motion for a new trial pursuant to Rule 59 on the basis of an erroneous jury instruction should be granted if an instruction was erroneous, unless the error was harmless. *See Velez v. City of New York*, 730 F.3d 128, 134 (2d Cir. 2013). A jury instruction is erroneous if it "misleads the jury as to the correct legal standard or does not adequately inform the jury on the

---

[1] QA3's requested jury instruction on contra proferentem is in relevant part:

> The Court has determined that the meaning of this language is ambiguous. Ambiguities in insurance policies should be construed in favor of the insured and against the insurer. In order for Catlin to prevail, it must demonstrate not only that its interpretation of the policy is reasonable, but that it is the only fair interpretation.

QA3's requested charge on ambiguity is in relevant part:

> To prevail, Catlin must establish (a) that Endorsement 9 is stated in clear and unmistakable language, (b) that Endorsement 9 is subject to no other reasonable interpretation, and (c) that Catlin's interpretation is the only fair interpretation. The Court has determined that the meaning of this language is ambiguous. Ambiguities in insurance policies should be construed in favor of the insured and against the insurer.

law." *Altria Grp., Inc. v. United States*, 658 F.3d 276, 286 (2d Cir. 2011) (internal quotation marks and citation omitted).  In determining whether a jury instruction was erroneous, the Court must ask "whether considered as a whole, the instruction[] adequately communicated the essential ideas to the jury." *United States v. Schultz*, 333 F.3d 393, 414 (2d Cir. 2003) (internal quotation marks and citations omitted).  "[A] jury instruction will be deemed adequate if the charge . . . is correct and sufficiently covers the case so that a jury can intelligently determine the questions presented to it." *Lore v. City of Syracuse*, 670 F.3d 127, 156 (2d Cir. 2012) (alteration in original) (internal quotation marks and citation omitted).

"An error is harmless only when [the court is] persuaded it did not influence the jury's verdict." *Townsend v. Benjamin Enter., Inc.*, 679 F.3d 41, 56 (2d Cir. 2012) (internal quotation marks and citation omitted). "[W]here jury instructions create an erroneous impression regarding the standard of liability, it is not a harmless error because it goes directly to the plaintiff's claim, and a new trial is warranted." *LNC Inv., Inc. v. First Fidelity Bank, N. Am. New Jersey,* 173 F.3d 454, 463 (2d Cir. 1999) (alteration in original) (internal quotation marks and citations omitted).

## DISCUSSION

### I.  Motion for a New Trial

#### A.  Contra Proferentem Did Not Apply

QA3 moves for a new trial because the Court did not instruct the jury on the doctrine of contra proferentem.  Because there was extrinsic evidence, and because QA3 was a sophisticated party, the doctrine of contra proferentem did not apply to this case, and accordingly the Court adequately informed the jury of the law.

"The fundamental, neutral precept of contract interpretation is that agreements are construed in accord with the parties' intent." *Greenfield v. Philles Records, Inc.*, 780 N.E.2d 166, 170 (N.Y. 2002).  "The best evidence of what parties to a written agreement intend is what

they say in their writing." *Id.* (internal quotation marks omitted). "As with any contract, unambiguous provisions of an insurance contract must be given their plain and ordinary meaning." *White v. Continental Cas. Co.*, 878 N.E.2d 1019, 1021 (N.Y. 2007). "The matter of whether the contract is ambiguous is a question of law for the court[,]" *Law Debenture Trust Co. v. Maverick Tube Corp.*, 595 F.3d 458, 465 (2d Cir. 2010), and "a written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms." *Greenfield*, 780 N.E.2d at 170.

"If, however, the language in the insurance contract is ambiguous and susceptible of two reasonable interpretations, the parties may submit extrinsic evidence as an aid in construction, and the resolution of the ambiguity is for the trier of fact." *State v. Home Indem. Co.*, 486 N.E.2d 827, 829 (N.Y. 1985); *see also Fed. Ins. Co. v. Am. Home Assur. Co.*, 639 F.3d 557, 567 (2d Cir. 2011). "On the other hand, if the tendered extrinsic evidence is itself conclusory and will not resolve the equivocality of the language of the contract, the issue remains a question of law for the court." *Id.* (internal citation omitted). "Under those circumstances, the ambiguity must be resolved against the insurer which drafted the contract." *Id.* (internal citations omitted). Resolving the ambiguity against the insurer who drafted the contract is the doctrine of contra proferentem. *See Morgan Stanley Grp. v. New England Ins. Co.*, 225 F.3d 270, 276 (2d Cir. 2000).

Because the existence of extrinsic evidence may enable the fact finder to resolve the ambiguity in the contract, "courts should not resort to *contra proferentem* until after consideration of extrinsic evidence to determine the parties' intent." *M. Fortunoff Corp. v. Peerless Ins. Co.*, 432 F.3d 127, 142 (2d Cir. 2005) (internal quotation marks and citation omitted); *see also Int'l Multifoods Corp. v. Commercial Union Ins. Co.*, 309 F.3d 76, 88 n.7 (2d Cir. 2002) ("courts should not resort to contra proferentem until after consideration of extrinsic

4

evidence"); *Schering Corp. v. Home Ins. Co.*, 712 F.2d 4, 10 n.2 (2d Cir. 1983) ("The trial court erroneously invoked this doctrine because *contra proferentem* is used only as a matter of last resort, after all aids to construction have been employed but have failed to resolve the ambiguities in the written instrument" (italics in original)); *cf. Kenavan v. Empire Blue Cross & Blue Shield*, 677 N.Y.S.2d 560, 563 (App. Div. 1998) ("Since evidence introduced by the parties extrinsic to the policies was not dispositive of the issue, the IAS court also properly relied on the doctrine of *contra proferentem*[.]" (italics in original)).  Here, there was ample extrinsic evidence from which the jury could divine the parties' intent.  Therefore, the doctrine of contra proferentem never became relevant.

Only when "the tendered extrinsic evidence . . . will not resolve the equivocality of the language of the contract," does the issue of contract interpretation revert to being a question of law, as to which the *court* should apply contra proferentem.  *State v. Home Indem. Co.*, 486 N.E.2d at 829; *see also Morgan Stanley Grp..*, 225 F.3d at 270, 276 (2d Cir. 2000) (finding that only when "extrinsic evidence does not yield a conclusive answer as to the parties' intent" that a court may apply other rules of contract construction, including contra proferentem) (quoting *McCostis v. Home Ins. Co.*, 31 F.3d 110, 113 (2d Cir.1994)); *Williams & Sons Erectors, Inc. v. S.C. Steel Corp.*, 983 F.2d 1176, 1183-84 (2d Cir. 1993) ("When the provisions of the contract are susceptible to conflicting constructions *and* when there is also relevant extrinsic evidence of the parties' actual intent, the meaning of the provisions becomes an issue of fact . . .  Ambiguity without the existence of extrinsic evidence . . . presents . . . an issue of law for the court . . . .") (emphasis in original) (internal citations omitted).

The reason extrinsic evidence creates an issue of fact is that the "fundamental, neutral precept of contract interpretation is that agreements are construed in accord with the parties' intent."  *Greenfield*, 780 N.E.2d at 170.  When a court has determined that a contract is

ambiguous, it has determined that the "best evidence" of the parties' intent -- the parties' words as memorialized in the agreement -- failed to indicate the parties' intent.  The fact finder then must look to extrinsic evidence to determine the parties' intent.  *See Home Indem. Co.*, 486 N.E.2d at 829.  Contra proferentem does not apply in such situations because it "is not actually [a rule] of interpretation" as "its application does not assist in determining the meaning that the two parties gave to the words, or even the meaning that a reasonable person would have assigned to the language used."  5 Arthur L.Corbin & Margaret N. Kniffin, *Corbin on Contracts* § 24.27 (rev. ed., 1998).  "It is chiefly a rule of policy. . . .  It directs the court to choose between two or more possible reasonable meanings on the basis of their legal operation, *i.e.*, whether they favor the drafter or the other party."  *Id.*  Courts construe contracts against drafters to incentivize them to write contracts more carefully.  *See Union Ins. Soc. of Canton v. Gluckin & Co.*, 353 F.2d 946, 951 (2d Cir. 1965) ("The terms of an insurance policy are usually what the insurance company chooses to make them. That is the rationale of the general rule that any ambiguity is to be resolved liberally in favor of the insured"); *see generally* 16 Samuel Williston & Richard A. Lord, *A Treatise on the Law of Contracts* § 49:16 (4th ed. 2014).  Where the words of a contract are ambiguous, but there is evidence of parties' intent, the "fundamental, neutral precept" of contract interpretation still must apply, and fact-finders must determine the parties' intent.

Moreover, contra proferentem did not apply in this case because QA3 was a sophisticated party that negotiated the terms of the insurance policy.  Contra proferentem does not apply where contracts are negotiated by sophisticated parties of equal bargaining power. *See Cummins, Inc. v. Atl. Mut. Ins. Co.*, 867 N.Y.S.2d 81 (App. Div. 2008) (refusing to apply contra proferentem where parties had equal bargaining power); *Westchester Fire Ins. Co. v. MCI Commc'ns Corp.*, 902 N.Y.S.2d 350 (App. Div. 2010) (contra proferentem was "inapplicable to this sophisticated policyholder"); *United States Fire Ins. Co. v. Gen. Reinsurance Corp.*, 949 F.2d 569, 574 (2d

6

Cir. 1991); *but see Morgan Stanley Grp.*, 225 F.3d at 279 (no general rule that contra

proferentem does not apply to sophisticated policy holder).  Accordingly, even if contra

proferentem were applicable in a jury case with meaningful extrinsic evidence, the principle is

not applicable in this case where sophisticated parties bargained over the terms of an insurance

contract.

Cases cited by QA3 are inapplicable to this case, because they do not involve using

extrinsic evidence as an aid in determining parties' intent when they agreed to a contract with

ambiguous terms.  In many insurance cases, there is no extrinsic evidence, and accordingly no

aid in determining parties' intent outside of the language of the contract.  In those cases, if the

contract is found to be ambiguous, "any ambiguity must be resolved in favor of the insured and

against the insurer."  *Pepsico, Inc. v. Winterthur Int'l. Am. Ins. Co.*, 788 N.Y.S.2d 142, 143

(App. Div. 2004) (internal quotation marks and citations omitted).  Indeed, if contra proferentem

always applied to resolve ambiguities in favor of the insured, then there would have been no

need for a trial, and QA3 would have won on summary judgment.  This case, however, required

a trial because meaningful extrinsic evidence was available to aid in determining the parties'

intent.  *See Home Indem. Co.*, 486 N.E.2d at 829 (where extrinsic evidence exists, intent is a

question for the fact finder).

Because there was extrinsic evidence to submit to the jury, and because there was an

equality of bargaining power between the parties, the Court's decision not to instruct on contra

proferentem adequately informed the jury of the law.

**B.  Heightened Burden of Proof**

QA3 also moves for a new trial on the ground that the Court misinstructed the jury,

namely, that Catlin need only "prove that its interpretation regarding language limiting coverage

[was] the correct one."  QA3 had sought an instruction that, to prevail, Catlin had to prove that

the limiting language was "stated in clear and unmistakable language," was "subject to no other reasonable interpretation," and that Catlin's interpretation was "the only fair interpretation."  The Court correctly chose not to use QA3's proposed charge.  QA3's proposed instruction on a heightened burden of proof is a restatement of the doctrine of contra proferentem.  When extrinsic evidence exists to aid a fact finder in determining the parties' intent, this "burden" is inapplicable.

In New York, "whenever an insurer wishes to exclude certain coverage from its policy obligations, it must do so in clear and unmistakable language."  *Seaboard Sur. Co. v. Gillette Co.*, 476 N.E.2d 272, 275 (N.Y. 1984) (internal quotation omitted).  "To negate coverage by virtue of an exclusion, an insurer must establish that the exclusion . . . is subject to no other reasonable interpretation, and applies in the particular case."  *Cont'l Cas. Co. v. Rapid-Am. Corp.*, 609 N.E.2d 506, 512 (N.Y. 1993) (internal quotation omitted).

In New York, this rule "is merely a specific, heightened application of contra proferentem."  *Sea Ins. Co.. v. Westchester Fire Ins. Co.*, 51 F.3d 22, 26 n.4 (2d Cir. 1995); *see also Int'l Multifoods Corp.*, 309 F.3d 76, 88 n.7 (2d Cir. 2002) (reversing the district court for applying the "only reasonable reading" standard by holding that courts should not resort to contra proferentum until after consideration of extrinsic evidence"); *Sincoff v. Liberty Mut. Fire Ins. Co.*, 183 N.E.2d 899, 902 (N.Y. 1962) (contra proferentem "has particular application where exclusions are involved"); *Breed v. Ins. Co. of N. Am.*, 385 N.E.2d 1280, 1284 (N.Y. 1978) (contra proferentem "is especially applicable where, as here, the ambiguity appears in a clause excluding coverage"); *Lipton, Inc. v. Liberty Mut. Ins. Co.*, 314 N.E.2d 37, 39 (N.Y. 1974)

(same).[2]  Because this rule is merely a restatement of contra proferentem, the Court correctly refrained from instructing the jury that Catlin's burden of proof was higher than the preponderance of the evidence.

## II.  Motion to Amend the Judgment

QA3 moves to amend the judgment pursuant to Federal Rule of Civil Procedure 59(e).  A motion under Rule 59(e) is appropriate "if the court in the original judgment has failed to give relief on a certain claim on which it has found that the party is entitled to relief."  Because the Court gave QA3 the relief to which it was entitled, the Court will not amend the judgment.

Catlin, the insurer, brought this case seeking a declaratory judgment.  Catlin brought four claims for relief, and QA3 brought two counterclaims.  Specifically, Catlin sought a declaration that the applicable limit of liability on the policy was $1,000,000 in Count I; that four separate insurable occurrences should be considered as one because they arose from the same events in Count II; that "Exclusion N" of the policy excluded QA3's claims in Count III; and that any assignment of rights under the policy would violate the terms of the policy and negate coverage in Count IV.  QA3 brought two counterclaims, but only the counterclaim for breach of contract

---

[2] Some New York and Second Circuit case law suggests, although it does not explicitly state, that the heightened burden for insurers in establishing that the exclusion applies is not contra proferentem, but instead a heightened standard for a *court* to apply when determining whether or not a contractual provision is ambiguous.  *See e.g. Parks Real Estate Purchasing Grp. v. St. Paul Fire & Marine Ins. Co.*, 472 F.3d 33, 43 (2d Cir. 2006) (quoting *Seaboard Sur. Co* for the holding that "policy exclusions 'are not to be extended by interpretation or implication but are to be accorded a strict and narrow construction' and that any ambiguity will be resolved against the insurer"); *Pepsico, Inc.* , 788 N.Y.S.2d at 145 (App. Div. 2004) ("At best, there being more than one reasonable interpretation to the meaning of the term 'contamination,' the exclusion is ambiguous." (internal citations omitted)).  Even under this view, if a court has determined that an ambiguity exists, and furthermore, that extrinsic evidence exists, the burden on the insurer at the trial stage is only to "prove that its interpretation is correct."   *Parks Real Estate*, 472 F.3d at 43.

survived at trial, and that claim was essentially the converse of Catlin's declaratory judgment action.

Catlin voluntarily withdrew Count III at trial.  The Court granted QA3 Judgment as a Matter of Law pursuant to Federal Rule of Civil Procedure 50 on Count IV at trial.  QA3 seeks to have the Court amend the judgment and rule as a matter of law on Count III, rather than permitting Catlin to voluntarily withdraw it.  Catlin's withdrawal of Count III is sufficient to give preclusive effect on Count III against QA3, because Count III could have or should have been brought in this case.  *Curtis v. Citibank, N.A.*, 226 F.3d 133, 139 (2d Cir. 2000) ("[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." (alteration in original) (quoting Federated Dep't Stores v. Moitie, 452 U.S. 394, 398 (1981)).  Accordingly, there is no need to amend the judgment on Count III.

The Court granted QA3's Rule 50 motion on Count IV at trial, and even if not included in the judgment, no amendment is necessary as QA3 received its requested relief.  The jury rendered a verdict as to Catlin's Counts I and II and on QA3's breach of contract counterclaim, finding that the separate private placement occurrences were subject to an aggregate $1,000,000 limit of liability under the policy.  Accordingly, the original judgment gave relief on all claims to which the parties were entitled.

## CONCLUSION

QA3's motion for a new trial and to amend the judgment is DENIED.  The Clerk of Court is respectfully directed to terminate the motion at Dkt. No. 167.

SO ORDERED.

Dated: July 2, 2014
      New York, New York

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE